The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning, Counsel. We're happy to have you with us even remotely. And we're also happy to hear argument in our first case, United States v. Buzzard. Mr. Bungard. Thank you, Your Honor. Again, my name is David Bungard and I'm here today on behalf of both the appellants, Jason Buzzard and Paul Martin. The first issue that I would like to address today is the District Court's error in denying the defendant's motion to suppress on two separate grounds. The first ground the District was wrong on was a finding that the officer's question as to whether there was anything illegal in the car was related to the mission of the stop. Specifically, the District Court thought that it had to do with officer safety. The second finding that we dispute is that that question, the District Court found that question did not prolong the stop since it was asked concurrently with other mission traffic related mission activities. And specifically, the District Court's ruling is contrary to the Supreme Court's finding in Rodriguez v. United States, as well as the other post Rodriguez cases that we've cited in our brief. Specifically, in Rodriguez, Judge Ginsburg held that any police conduct that extends the time that's reasonably required to resolve a traffic stop, in this case, writing a ticket or having a defective brake light, will violate the Fourth Amendment. In Rodriguez, the court specifically rejected the government's position that an officer can incrementally prolong that amount of time to run a traffic stop so long as the officer remains reasonably diligent about pursuing the reason for the stop. Specifically, the court in Rodriguez said there is no room for any de minimis time. Any extra time that's added to the stop will be a violation of the Fourth Amendment. Now, that doesn't mean that officers can't ask questions during a traffic stop. The court in Rodriguez said that questions related to checking driver's license, the person's registration, checking for outstanding... Mr. Bungard, this is Judge Diaz. Good morning. May I ask a question? So, in this case, the allegation is that the stop was extended as a result of the request for backup by the officer, which I understood to be a matter of policy that when a stop occurs late at night, as it did here, that this particular police department had a policy that the officers would wait for backup, whether or not called, because as a matter of policy, the officer would inevitably show up as backup, and that's exactly what happened here. So, why is that not related to the purpose of the stop here? Unless you're making an allegation of some sort that there was bad faith on the part of the officers here, and I don't see that here in the record. So, can you explain that to me? Yes, Your Honor. I think that the problem here, if the government wants to say that he needed to wait for an additional officer to show up, I think that would also be a separate Rodriguez violation, because looking at the facts and circumstances of this case, we had an officer that did not decide to wait for the backup to show up before he approached the car. We had an officer that did not run a license plate check of a car to see who he was possibly dealing with, or to see if this was a possible stolen vehicle. Instead, this officer, the only reason he pulled this car over was for a defective brake light, and he initiated the stop, and the problem is that he asked the question... Well, but Mr. Bungard, I don't think you can dispute that even the most innocuous of traffic stops can turn on a dime and become dangerous in an instance, and there was record evidence in this case that, at least from the officer's perspective, the passenger was acting a bit squirrely. He looked like he might want to be making a run for it, at least that's the way it was described by the officer, and it was the middle of the night, and so why wouldn't it have been reasonable for the officer to simply wait for the time necessary to have a backup officer arrive, and in that instance, assuming that that wasn't unduly delayed, what is unconstitutionally suspect? What is constitutionally suspect about asking a single question? I think the problem, and this is what Rodriguez addresses, is that an officer cannot go into an on-scene investigation and ask questions simply whether or not there's anything illegal in the car, because that goes way beyond the purpose of the stop. Well, I'm granting you that, but let's assume that the district court judge actually made a finding that that was in fact related to the stop, because the question, be it framed broadly, could be interpreted from the officer's perspective to be a concern about weapons, but let's put that aside for the moment and say that that question was unrelated to the purpose of the stop, and we still have the problem about the fact that the officer testified that, in fact, he was awaiting backup before he could complete the mission of the stop, and if we accept that as true, why does it matter that he asked one single question during the interim while he was waiting for the backup to arrive? You know, I would say that the facts of this case would show that his testimony about waiting for Mr. Buzzard turned over a marijuana bottle. Well, how can that be so when, in fact, the backup arrived? I mean, it happened the way he testified. Well, the way the backup officer testified at trial, and actually he was a witness at trial, Patrolman Messer, he said that by the time he showed up, Mr. Buzzard was already out of the car and detained, so this officer went ahead and did what he did. He took Mr. Buzzard out of the car, had him out by the side of the car, and had him detained before the second officer showed up, so that's where my argument is, is that this really wasn't for officer safety. It was this officer asking investigative questions, trying to find out if there was something else he could write a ticket on besides counsel. Yes, sir. Sorry to interrupt you. So, I understand the argument that you're making, I think, which is this is a post-hoc rationalization. We should not believe the officer, but help me understand the motion to dismiss is denied, and we're required to take the facts in the light most favorable to the government, right? I mean, that's the standard that we must apply, and help me understand how I can do that in light of Judge Diaz's questions, and still sort of, you know, reject the officer's statements as false, you know, find the district court's findings unsupported. I mean, you know, your arguments might well have some purchase in a district court, but given that we have to accept the facts in the light most favorable to the government, which would suggest that the was awaiting backup as per the policy of the department, I have trouble with the argument in that framing. Can you help me there? Again, I think there might be certain instances where it might be appropriate to wait for backup, but in this case, based on the information that that but instead launching into a new investigation. And how do I reach that conclusion, taking the light, taking the evidence in the light most favorable to the government, right, that the officer acted unreasonably in awaiting backup? I mean, that's, I mean, I just, I mean, I mean, I get the argument before the district court, right, and I, you know, but we have sort of a little bit of a different standard here. Help me understand how that's not flipping that burden. I mean, it seems like to me you're asking me to take the facts in the light most favorable to your client, and maybe that's a plausible reading of what happened below, but certainly is not the reading in the light most favorable to the government, no? Your Honor, the other thing I get to point out is that during the he asked that question, and he didn't say anything about he was concerned about his safety. He stated that he asked the question based upon the time of night, the high drug area, the high crime area, Mr. Marks. And all of that goes to the question that Judge Diaz assumed away here, whether it was related to the purpose of the stop. And I, again, I think maybe you have an argument on that, maybe not given the light most favorable to the government standard that you're faced with, but that doesn't affect the awaiting backup point, does it? Well, again, I think I go back to what was in this officer's mind when he asked the question, and I don't think it was officer safety. I think it was trying to fish. And we need, in for your position to prevail, we need to a determine that that subjective belief is determinative, not the objective reasonableness. And then B, we need to assume that fact against the government. Yes, Your Honor. But again, I also would say that in this instance, asking for backup would be a separate Rodriguez violation to the extent that it more than a minimus addition to the delaying the stop. And I would look at it this way. In West Virginia, we have a lot of rural areas. And what's to say an officer says he needs backup, and it takes 20-30 minutes for another officer to show up for a traffic stop that has to deal with a defective brake light? That surely would violate a person's Fourth Amendment rights to that issue addressed promptly and not have to wait for the second officer to show up. I think in this case, the facts that were presented before the district court show that this officer was not concerned with officer safety, initiated a stop on his own. Even after he asked the question, he got the driver out of the car. He didn't wait for the officer to show up before he did anything else. So I think from the facts of this case, I don't see where officer safety is a standard that the government should be able to argue here because of the additional time that it adds to the stop. The other issue I would point out here, to the extent that I think it's important to know also that this is not a case where the officer actually made a call for backup. As the wasn't an issue where he got on his radio right then and there and said, hey, I need help here, I'm concerned, or gave a code. He went ahead with the stop as he went to anyway. Would it have made a difference if he had made a call rather than this being the procedure that they used to have automatic backup? I think it would. It goes to the It's no different. Well, but if he knows he's going because of their standard procedure, get help. Help me with that. I don't think I understand that. Why does that make a difference? I think one of the things that Rodriguez said, the facts of Rodriguez were the officer waiting for another officer to show up with a drug dog unreasonably extended the stop because that was going to go into an investigation of the car for other wrongful activities. In this case here, calling for another officer, regardless of its color, if it's a policy here without reasons without reasonable suspicion or reasonable concerns for the officer safety, the facts of this case just don't short short up with the reason why this officer stopped this car. It was not a case where the driver was driving erratically, had been speeding 100 miles an hour and put him over for that. There was nothing initially where this officer felt threatened as he approached the vehicle. He noticed the driver did not do anything. Counsel, but what I was doing is positing to you exactly the same facts. Would it make any difference whether he had had to call for backup or whether he relied on this policy of having backup automatically come? I don't think it did. But then you go and change the facts on me. I don't think it would, given the circumstances of this case. Okay, so we have. Uh, but I would also positive extent that the court does find that there was a Rodriguez violation here. The officer did not have reasonable suspicion to, um, to ask the question that he did on. And that was the government at the suppression hearing. That was the whole focus of the government's argument was that that this officer asked its question, but he had reasonable suspicion to ask it based on what he saw and based on various factors. And this court has said that in order for an officer to be able to articulate why someone's behavior was suspicious, it has to be indicative of some other type of sinister activity. If you look at the specific factors that that are involved in this case, that time of the stop, the fact that it was late night, if you look that fact individually, that of itself is not necessarily inherent of any suspicious activity. Someone out driving at 1 30 in the morning, the officer tried to say that the sheets gas station where he was at was a high crime area. Although this officer didn't was not conducting any surveillance that night, never saw Mr Martin get in the car at that location. He just thought it came from that area on the court is noted. In other cases of the combination of somebody having a past record recent release from prison on perhaps moving around in a car would not support a reasonable a reasonable suspicion finding to warrant any additional time being added to the stop. I would note my time is up. Thank you very much. Mr Hummer. Alex Hummer representing the United States in this case. It is court counsel. The single question asked by Officer Dawson in this case did not measurably extend the stop in any way. And as the court has already noted, it transpired while he was awaiting backup. Furthermore, even if it had extended the stop, Officer Dawson had reasonable suspicion of criminal activity and would have been permitted to investigate that suspicion by asking additional questions. Finally, addressing the other issues in the appellant's brief, the evidence admitted that trial was more than sufficient to convict the defendant and the verdict returned by the jury and entered by the district court should be sustained by this court. As this court is already, as these judges have already been Officer Dawson was waiting backup. He testified as much at the suppression hearing. In fact, he testified that he waited approximately 3-5 minutes before the second officer did arrive. It was during that time period that he asked this question of whether or not something illegal was contained in the car. Now, addressing the specific facts of this case, which I think are counsel very, very, can I can I ask a question just of your understanding? And I've not gone back and read in detail the briefing, but I understood the argument the defendants made in the district court and on appeal to be that the asking of a question, asking this question, that that was what they were challenging. But an argument today, it seems to be, and I wrote it awaiting backup was an improper action, not the question, right, which just seems to be what they challenged. But instead that the officer was not entitled to await backup. Is that do you understand that to be a different issue? Or do you think that was encompassed? Obviously, I'm asking you as an officer who read all this information is is that part of the claim that was raised? Or is that a distinct claim in your in your mind from the question related arguments that seem to be the focus of the briefing? I think you're on point. The issue of whether or not the waiting for backup was extending the stop was raised or has come up this morning with the question by Judge Diaz, which I'm not saying isn't appropriate. It just wasn't. It's this. As you're recognizing, it wasn't addressed in the briefing. It was the single solitary question that was the issue at the suppression hearing that was addressed in the briefs. But Judge Goodwin had found, the district court had found that this question transpired during the course of the stop itself. And so it was related to the mission of the stop itself. Specifically, he also noted that the officer was waiting for Buzzard and Martin to produce identification, proof of registration for the car, proof of insurance, none of which ever took place, quite frankly, because they didn't have it. So they weren't able to produce it. And while he was waiting for these documents, Officer Dawson was also waiting for backup to arrive, which is what he testified was for their policy, specifically when he radios in that there are more occupants in the vehicle, specifically in this case, two people in the car. He was by himself. It was a high crime area. It was 136. I asked one one one other question, which is sort of similar to the one I asked your colleague. The district, I just am trying to understand this sort of oddity here. The district court here declined to find when this question was asked, right? The defendants testified it was immediately, the officers testified it was later, sort of when this process was going on. The district court explicitly seems to not answer that question. And and yet we're required on appeal to take the facts in the light most favorable to the government, which seems a little odd, right? Because that suggests that we have to find that the question or we have to assume, I guess the question was asked not at the beginning, but during the course of the stop, because that's the light most favorable to the government. Even in a case where the district court refused to make that credibility finding, is that I mean, it strikes me as odd. What am I what am I missing? I mean, am I missing something? Do you agree that's what we're required to do, even despite the district court's refusal to make a finding on it? That was omitted from the court's memorandum of opinion. And whether or not it's odd or not, I suppose I'm young enough to not be able to, I can claim naivete there and I don't know. But I will say that I agree with your decision or your opinion that it is, the evidence should be viewed in the light most favorable to the government. I mean, that's what case law and precedent has stated repeatedly. And the testimony that provided by Officer Dawson, both at trial and in the suppression hearing, was that he arrived on the scene and asked for license and registration. That at that time, the driver who was buzzered told Officer Dawson that he did not own the car, that he was borrowing it from somebody else. And so he was unable to find the registration, the insurance, nor was he ever able to produce a license for himself or for Paul Martin. So during that entire colloquy between Officer Dawson and these two occupants of the car, Officer Dawson recognizes, well, Officer Dawson testified that he recognized Paul Martin immediately, that he knew him as being a recently convicted felon who was recently released from prison, that he'd had multiple interactions with him in that short time period that he'd been released from prison, including a domestic case and another case in which he was a suspect or possibly engaged in burglarizing cars and other suspicious activity. Now, admittedly, he was never charged with anything, never arrested on any of the other incidences, but it does put him outside the realm of normal traffic stops, which is what we look at with reasonable suspicion. Officer Dawson objectively, and again, not his subjective intentions, but what objectively would be available to anybody in his situation, knew the following facts, that he would get pulled over a car for defective brake light, that he was in a high crime area that was frequently used for staging drug activity, that it was late at night, that Paul Martin was a recently convicted felon. He was fidgeting in his seat excessively. He testified specifically that he was moving around and looking out the window up and to the right, and he believed, or he looked as though he was going to run. He continued to interrupt the conversation between the officer and Buzzard, saying specifically, we're not up to anything. Officer Dawson also knew that Martin had serious drug addiction, and all of these things together put this stop, based on these facts, outside the realm of a normal traffic stop, which is what reasonable suspicion is. When an officer stops a car and the person is receiving a citation for a traffic stop, or for speeding, or whatever that might be, when you have people who are acting outside what a normal person would do, it's going to alert that officer to some type of suspicious activity, being some type of criminal activity, which is exactly what happened in this case. Counsel, could I circle back to Judge Richardson's question about sort of what we, on review, take to be the record here, and with respect to what the district court did, which was not make a finding of when this question was asked, whether it was during the you were saying, is that you agree with the district court that it doesn't make any difference for purposes of sustaining what the district court did here. And that may be true, but if it did make a difference, what would we be crediting? Because the district court didn't make a finding. Do you understand what I'm saying? I agree. Yes, ma'am. Quite frankly, as Judge Richardson has stated, I believe the standard here is that the facts of this case have to be viewed in the light most favorable to the government. Certainly, if the district court had made a finding that there was an issue that Officer Dawson was more credible than the other, that would also be required to be supported by this court. But based on the trial evidence, as well as the evidence presented at the suppression hearing, the facts most favorable to the government are that Officer Dawson asked this question while he was engaged in his other traffic and mission-related duties. So, facts upon which the district court never makes a finding, and there's disputed testimony, we always give to the government? Is that your position? I believe it's the appellee that, um, Your Honor, I genuinely don't know that. I think that I would agree with Judge Richardson based on what you stated, but I can't. The light most favorable to the government. I don't understand why this is. I mean, this is my point of oddity, right, is that if the district court made a clear error, right, but if the district court doesn't make a finding, then at least as our case law stands, we must take the facts in the light most favorable to the government. It's almost by not making a finding the district court, like, gets more deference. I mean, I'm not sure that makes sense, but I guess I'm, this is, I think Judge Motz has identified exactly the sort of angst that I've got here is that by not making a finding, the standard is almost better for you than if the district court had found that the question was asked in the middle of the stop, we could review that for clear error, right, as a factual finding. But if the district court makes no finding, at least all of our cases say that we must take it in the light most favorable to the government, and here, I presume that means that it's in the middle of the stop. I mean, that was the question I was asking your colleague, and Judge Motz did a better job of teasing that out than I did, but, right, I mean, that's, and I, you know, I think you said you just don't know, but that's the, that is sort of a concern given what our standards are. Shouldn't it be? I agree that it is an oddity in this case. However, I don't think it's necessary to court make a ruling on that in this case, specifically because, as the district court found, and as I believe the evidence supports, that this question, regardless when it took place, did not measurably extend the stop in any way, largely because, as Judge Diaz had pointed out, the officer was awaiting backup anyway. So I don't think we need to make a determination on the credibility of if it was the first question that was asked or if it was asked as Officer Dawson testified repeatedly that it was during the course of when he asked for license registration and the like. Regardless of when it was asked, Officer Dawson was awaiting backup, and so it wouldn't have extended the stop anyway, and even if it had extended. Is there evidence that, like, before he walked up to the window, that he was awaiting backup? I thought the evidence, because if it was very first question, he would have been awaiting backup before he even walked up to the car. It seemed to me the testimony was, I was awaiting backup because of a fear for flight. He didn't decide in the car he was going to wait backup. He got up there and they were flighty and that sort of thing. So if it was the very first question asked, can we really say that it didn't extend the stop? I think so, because he testified specifically that he, when he approached the car, he immediately recognized the defendant. And so all the facts we've articulated, he knew right away. Perhaps the evasive behavior may have come in shortly afterwards, but the reality is that his story that he told is the only one that makes sense with the timeline, the other evidence that was presented, quite frankly. Not to mention that, well, and I won't get into that, quite frankly, regardless of when the question was asked, Officer Dawson was awaiting backups. He testified specifically because of the high crime area. It was late at night. He was outnumbered. He recognized the defendant as being a convicted felon, and so he testified he didn't go back to his car because he didn't want to leave them alone while he was waiting for another officer to arrive. And backup came within three to five minutes, is that right? That was his testimony at the suppression hearing, Your Honor, yes. Okay. And I know that- Mr. Hunter, can I ask a question about another part of the district court's ruling? The district court also, I think, if I'm remembering correctly, found that the question itself, even as phrased, that it was at least reasonably related to officer safety and so was a proper question regardless of whether or not it extended the stop. Do you agree with that? Well, I imagine you do, but tell me why. Sure. So unquestionably, and as this court is aware, the officer is allowed to get up to ask a litany of questions that are related to the stop itself and also questions regarding whether dangerous weapons are contained in the car because of the dangerous nature of traffic stops. I can't remember which of you had mentioned that these traffic stops can turn on a dime, and so certainly they're allowed to ask the least intrusive questions permissible. Now, I understand that asking if there's anything illegal in the car is somewhat distinct from asking if there's a firearm in the car, but it also wasn't specifically asking if there's drugs in the car, something that shows that he was looking for anything other than, as Judge Goodwin found or the district court found, something that was related to officer safety. The question itself is a little bit broader and more generalized than asking if there were firearms in the car, absolutely. And if he had furthered that then that would be engaging in a separate investigative situation. But the solitary question itself here is so broad and over-generalized that I don't know that it specifically, let me say that differently, that it encompasses whether or not there were firearms or other things, explosives, things that could be dangerous for the officer. And so I do think it was related to officer safety, not to mention that outside of firearms there are items contained in these cars which can be dangerous, including fentanyl, carfentanil, things that if the officers even come remotely in contact with can be dangerous for them. Okay. Yeah, let me ask a question about the policy regarding backup. And you listed a litany of things that gave the officer some concern about his safety. Let's assume that none of those facts existed. I mean, this was the most, in fact, one of the most innocuous stops you can imagine. And yet there's a policy in place that an officer will await backup. Or an officer as a matter of policy says, in every case I'm going to await a police backup. I thought I understand your friend's concern on the other side is that this could be a subterfuge for extending stops to engage in a separate investigation. Do you concede that there might be a set of facts where that notion of needing backup just might not win the day? Or is it your view that we don't get the second guess officers when it comes to a need for backup? Specifically in the case that Mr. Bungard mentioned in Rodriguez and I believe in Johnson, the court addressed whether or not, well, they acknowledge that traffic stops are especially fraught with danger and that burdensome precautions to do their job safely. So I would agree that if there was, as this court is always going to do, it's going to look at the facts of the case in front of it. I'm not going to say that there is not some hypothetical situation out there where it could be an unnecessary burden on the Fourth Amendment for somebody to wait for backup. That's plausible. I can't, I don't know. What about the scenario that Mr. Bungard posited that at the backup in a small rural town, small police department took an excessive amount of time, you know, half an hour, an hour. Is that a problem? It could be. But at the same time, I think it would depend on the facts before the court at that time. I know that you're positing that if this was the most innocuous stop and he's waiting 30 minutes for backup, I could easily see how that would be burdensome on the Fourth Amendment and would be a problem. However, in this case and before this court, we have a short stop of three to five minutes where he's waiting for backup in the not rural areas in downtown South Charleston, in a high crime area where the officer knew the backup was coming, as always happened to us, happened in this case, based on their policy. And so he didn't need to call it in and the officers arrived within a very short time period. In a different scenario, I suppose this court may find differently. I don't know, but in this case, back for it. I thought this is an interesting question to me. But do you agree with your colleague, Judge Motz asked the question earlier, whether it would matter if there was a call as opposed to a policy? Right. I mean, you know, I recently got pulled over in Columbia and the first cop pulled in and then a second cop pulled in. And I asked the officer why the second guy was there. And he said, it's our policy that, you know, we have two people come. Are we going to be hearing this case? Maybe you shouldn't. I don't think so. So you would be probably refused. But the point is they pulled two people in. But it was a matter of policy. It happened all in every instance. And so it's not dependent. You know, we talk about all kinds of community caretaking policies, inventory policies, but we look at policies differently than we do where an officer makes a choice to extend a stop for a drug dog to get there in an individual instance. Do you your colleagues seem to suggest it doesn't matter one way or the other? I'm not sure it's totally implicated here, but do you have a view? And you can say you have none. I'm OK with that. But do you have a view on whether it does matter, whether it's sort of part of a policy or whether it's an individualized choice by the officer to delay to get a drug dog there or to get somebody as backup? I don't believe there's any reason to view it differently, whether they make the call for backup or whether they know that the backup is going to come because of a policy or procedure. I think the implication was that Officer Dawson was lying or, I don't know how to say that differently, was not being forthright with his intentions and asking the question that he wasn't actually waiting for backup because he never called it in. But I think that was the implication. I absolutely don't agree with that. But whether or not a question of if he calls it in or if he knows backup is going to come and just waits for it, I don't think that makes any difference whatsoever. Unless perhaps if he waits for it and they never show up and he's waited 30 minutes and the facts that Judge Diaz has pointed out are an issue. And I see that my time is up. And so unless there are further questions, I'll simply conclude with asking the court holdings. Thank you. Is there any rebuttal, sir? There. Your Honor, to the point that the government... Counsel, excuse me. We didn't hear the first part of what you said. You were muted then. Okay. To the government's issue as to whether or not the officers can wait for another criminal activity, the problem with that is that totally ignores what Rodriguez says and essentially would give officers the opportunity to do anything they wanted to during the time period while they're waiting for that second officer to show up. And that's not what Rodriguez says. Rodriguez says you cannot extend a traffic stop unless you either have consent or you have reasonable suspicion that that person is engaging in some other type of criminal activity. And this officer did not have reasonable suspicion that either of these two gentlemen were engaged in any criminal activity when he asked the question, is there anything illegal in the car? If he was concerned for his safety, he would have either waited for that officer to show up before he initially approached the car, or he would have asked a specific question. Do you guys have any guns in the car? Are there any weapons? He didn't ask that question. He asked, is there anything illegal in the car? And that is what several circuits that I've cited in our brief, the 11th, 2nd, and 9th Circuit, have all held, that where officers come in and they start asking questions unrelated to the traffic stop, in the Campbell case that's before the 11th Circuit, the question was asked to the driver, did he have any counterfeit CDs, illegal alcohol, marijuana, methamphetamine, or dead bodies in the car? As he was writing the ticket, the court specifically found there that asking the question, waiting for the answer from the driver, unlawfully prolonged the stop where it was beyond the... I think he was weaving in and out of traffic, failing to stay in his lanes, he had a problem with the sedlights, but it was outside the scope of that. And the question again... The officer here to ask, do you have any dangerous items in the car? You know, guns, fentanyl, explosives, whatever we want to posit, dangerous items. Do you agree that the officer could have asked that question? Yes, because I think that question goes to officer safety. Okay, and so the question I'm trying to tease out is, so if he asked the narrower question that you suggest from the 11th Circuit, do you have non-dangerous criminal items in the car, right? So that would not include, so counterfeit, right? Dead bodies, things that are not dangerous. I understand why that's just about investigating crime. But if you ask the broader question, which takes the same amount of time, is do you have any dangerous items? And do you have any illegal items? Why is that broader question problematic when it encompasses a narrow question that would be permissible? Well, I think having drugs in the car is not in itself dangerous, or to the extent that having a gun in the car would be considered something that's dangerous. I think the question has to be specific addressed. If it's going to be for officer safety, it has to be about something in the car that could harm the officer, such as a the, are there illegal items in the car, encompasses both dangerous and non-dangerous, right? And so what I'm getting at is, if he just asked about non-dangerous items, right, do you have marijuana in the car? I agree that's not related to the stop. But if he asked the broader question, right, do you have any illegal items, which would include both dangerous and non-dangerous items, why is the broader question impermissible when a more narrowly focused question would be permissible? Because that's the whole holding of Rodriguez, Your Honor, is that in order to conduct an investigation, for an officer to ask a question if there's anything illegal during a traffic stop, that is the whole holding of Rodriguez. Rodriguez says you can't get into starting a new investigation on something separate and distinct from the reason of the stop unless you have reasonable suspicion. And just the fact that he has somebody that he sees in a passenger seat that is a convicted felon does not rise for reasonable suspicion to, it would not be rise of reasonable suspicion to evoke a Terry stop of that individual just on the basis of someone's prior record. If that was the case, any person that had a criminal background could be stopped and ask that question. So again, I think the focus of Rodriguez is that you have to have reasonable suspicion if you're going to ask a question other than related to the stop, and that would include questions such as, do you have anything illegal in the car? And my time is up, Your Honors. I would ask the court to reverse this case. Thank you very much.
judges: Diana Gribbon Motz, Albert Diaz, Julius N. Richardson